UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHELLEY DENTON, and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT STORES NATIONAL BANK,<br><br>Defendant. | No. 3:10-cv-05830-RBL<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: MAY 20, 2011**<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

I. Plaintiff's Washington Consumer Protection Act And Unconscionability
   Claims Are Preempted........................................................................................................1

   A. The National Bank Act Preempts Plaintiff's Claims Because They
      Would Condition DSNB's Exercise Of A Federally Authorized
      Banking Power Upon State Regulatory Requirements ................................................1

   B. The OCC Regulation Also Expressly Preempts Plaintiff's CPA And
      Unconscionability Claims ............................................................................................5

II. Plaintiff's Claims Should Be Dismissed For Failure To State A Claim ...............................7

   A. The Contract And Good Faith Claims Should Be Dismissed .....................................7

   B. The Unjust Enrichment And Restitution Claims Should Be
      Dismissed ....................................................................................................................8

   C. The Unconscionability Claim Should Be Dismissed ..................................................9

   D. The Injunctive And Declaratory Relief Claims Should Be Dismissed ......................10

III. Plaintiff's Causes Of Action Are Time-Barred ................................................................10

CONCLUSION...................................................................................................................12

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO     - i -     WILMER CUTLER PICKERING HALE AND DORR LLP
DISMISS PLAINTIFF'S COMPLAINT     399 Park Avenue
No. 3:10-cv-05830 RBL     New York, NY 10022
    (212) 230-8800

# TABLE OF AUTHORITIES

## CASES

*Arevalo v. Bank of America Corp.*,
    No. C10-4959 TEH, 2011 WL 1195973 (N.D. Cal. Mar. 29, 2011) ........................1, 4, 5, 7, 8

*Badgett v. Security State Bank*,
    807 P.2d 356 (Wash. 1991)...............................................................................................7, 8

*Bank of America v. City & County of San Francisco*,
    309 F.3d 551 (9th Cir. 2002)..................................................................................................6

*Barnett Bank of Marion County, N.A. v. Nelson*,
    517 U.S. 25 (1996).................................................................................................................2, 3

*Del Rosario v. Del Rosario*,
    97 P.3d 11 (Wash. 2004).......................................................................................................11

*Do Sung Uhm v. Humana, Inc.*,
    620 F.3d 1134 (9th Cir. 2010)................................................................................................9

*Doe v. SexSearch.com*,
    551 F.3d 412 (6th Cir. 2008)..................................................................................................9

*Eckert v. Skagit Corp.*,
    583 P.2d 1239 (Wash. Ct. App. 1978)..................................................................................11

*Erickson v. Chase*,
    231 P.3d 1261 (Wash. Ct. App. 2010)..................................................................................10

*First National Bank of Eastern Arkansas v. Taylor*,
    907 F.2d 775 (8th Cir. 1990) .................................................................................................6

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
    935 P.2d 628 (Wash. Ct. App. 1997)....................................................................................8

*Hamilton v. Pearce*,
    547 P.2d 866 (Wash. Ct. App. 1976)....................................................................................11

*Hickman v. Wells Fargo Bank N.A.*,
    683 F. Supp. 2d 779 (N.D. Ill. 2010) ....................................................................................9

*In re Park W. Galleries, Inc.*,
    732 F. Supp. 2d 1181 (W.D. Wash. 2010)............................................................................9

*Iselin v. United States*,
    270 U.S. 245 (1926)................................................................................................................6

*Lectro-Tek Services, Inc. v. Exeter Packers, Inc.*,
    No. 28088-8-III, 2010 WL 2403393 (Wash. Ct. App. Div. 3, June 17, 2010) ..................8

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

- ii -

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

*Martinez v. Wells Fargo Home Mortgage, Inc.*,
   598 F.3d 549 (9th Cir. 2010) ..................................................................................2, 4, 5

*McKee v. AT&T Corp.*,
   191 P.3d 845 (Wash. 2008).............................................................................................9

*Northwest Independent Forest Manufacturers v. Department of Labor & Industries*,
   899 P.2d 6 (Wash. Ct. App. 1995)...................................................................................7

*Penner v. Chase Bank USA, N.A.*,
   No. 3:06-cv-05092-FDB, 2006 U.S. Dist. LEXIS 53179 (W.D. Wash. Aug. 1, 2006).............9

*Pickett v. Holland America Line-Westours, Inc.*,
   35 P.3d 351 (Wash. 2001)..............................................................................................11

*Reeves v. Teuscher*,
   881 F.2d 1495 (9th Cir. 1989) .......................................................................................12

*Rose v. Bank of America Corp.*,
   No. CV 10-6067-VBF (JCx), slip op. (C.D. Cal. Nov. 5, 2010), *order adopted*,
   Order (C.D. Cal. Nov. 8, 2010).............................................................................3, 4, 5, 6

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir. 2008) .....................................................................................2, 3

*Spinelli v. Capital One Bank*,
   265 F.R.D. 598 (M.D. Fla. 2009).............................................................................3, 5, 6

*Texaco Inc. v. Duhe*,
   274 F.3d 911 (5th Cir. 2001) ...........................................................................................6

*United States v. Mead Corp.*,
   533 U.S. 218 (2001)........................................................................................................6

*Watters v. Wachovia Bank, N.A.*,
   550 U.S. 1 (2007).............................................................................................................4

*Wm. Dickson Co. v. Pierce County*,
   116 P.3d 409 (Wash. Ct. App. 2005).............................................................................10

*Zuver v. Airtouch Communications*,
   103 P.3d 753 (Wash. 2004).............................................................................................9

**STATUTES, CODES & RULES**

12 U.S.C. § 43 ........................................................................................................................5

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203,
   § 1048, 124 Stat. 1376 (2010) .........................................................................................5

Wash. Rev. Code § 4.16.270..................................................................................................11

12 C.F.R. § 37.1 ..........................................................................................................2, 3, 5, 6

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

- iii -

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

**OTHER AUTHORITIES**

Debt Cancellation Contracts and Debt Suspension Agreements: Final Rule,
   67 Fed. Reg. 58,962 (Sept. 19, 2002) ...............................................................................2, 5, 6

**INTRODUCTION**

Plaintiff voluntarily enrolled in payment protection approximately 13 years ago. In hindsight, she does not like the deal. So Plaintiff now claims that her enrollment was unlawful for two reasons: DSNB did not examine her eligibility for certain of the program benefits and DSNB allegedly failed to disclose certain eligibility restrictions. The complaint is filled with other allegations that have nothing to do with Plaintiff. For example, she alleges unspecified issues with claim administration. But Plaintiff does not allege that she ever filed, or tried to file, any claim. Nor, of course, does she allege that DSNB ever denied any such claim. Plaintiff's complaint is thus nothing like *Arevalo v. Bank of America Corp.*, No. C10-4959 TEH, 2011 WL 1195973 (N.D. Cal. Mar. 29, 2011), another case filed by her counsel, on which she places so much reliance. That was about a bank allegedly enrolling people *involuntarily* in payment protection. Plaintiff's case, instead, is one of buyer's remorse, more than a decade after the fact.

The complaint should be dismissed for three reasons. *First*, the National Bank Act preempts Plaintiff's attempt to impose sales and disclosure requirements on DSNB, a national bank, under Washington state law. (*Infra*, Part I.) *Second*, Plaintiff's claims fail to state viable legal theories in their own right. (*Infra*, Part II.) *Third*, the claims are stale, with the longest of the statutes of limitations having expired approximately seven years ago. (*Infra*, Part III.)

**ARGUMENT**

**I. PLAINTIFF'S WASHINGTON CONSUMER PROTECTION ACT AND UNCONSCIONABILITY CLAIMS ARE PREEMPTED**

**A. The National Bank Act Preempts Plaintiff's Claims Because They Would Condition DSNB's Exercise Of A Federally Authorized Banking Power Upon State Regulatory Requirements**

There is a well accepted framework, set forth in Supreme Court and Ninth Circuit decisions, for analyzing whether the National Bank Act ("NBA") preempts the application of state law to a national bank. Plaintiff's opposition brief ignores that framework.

First, courts ask whether the NBA grants to national banks the power at issue. *See, e.g.*,

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

- 1 -

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

*Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31, 34 (1996); *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554-55 (9th Cir. 2010); *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037 (9th Cir. 2008). Here, there is no dispute about the answer to that question. It has been clear for several decades that the NBA authorizes national banks to offer debt cancellation contracts ("DCCs") and debt suspension agreements ("DSAs"). *See, e.g.*, *Debt Cancellation Contracts and Debt Suspension Agreements: Final Rule*, 67 Fed. Reg. 58,962 (Sept. 19, 2002) (citing 1963 OCC determination); *see also* DSNB Mem. 5 (additional authorities). The OCC regulation confirms the point. *See* 12 C.F.R. § 37.1(a).

Second, courts next ask whether Congress or the OCC, in granting the power, gave any indication that a national bank's exercise of that power should be subject to state regulation. The presumption is that national banks are not subject to such regulation. As the Supreme Court has explained, the "history is one of interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Barnett*, 517 U.S. at 32; *see also Rose*, 513 F.3d at 1037. "[W]here Congress has not expressly conditioned the grant of 'power' upon a grant of state permission, the Court has ordinarily found that no such condition applies." *Barnett*, 517 U.S. at 34. State laws that seek to condition a national bank's exercise of its authorized banking powers upon compliance with state regulations (*e.g.*, state-law disclosure requirements) by definition "prevent or significantly interfere with the national bank's exercise of its powers," and thus are preempted as a matter of conflict preemption under the NBA. *Id.* at 33.

Applying this framework, both the Supreme Court and Ninth Circuit have held the NBA to preempt the application of state laws to national banks. For example, the Court in *Barnett* and the Ninth Circuit in *Rose* concluded that national banks did have the powers in question (in *Barnett*, to sell insurance; in *Rose*, to lend money) and then found no indication in the grants of the powers that national banks should be subject to state-law limitations. *See Barnett*, 517 U.S.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

- 2 -

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

at 34-35; *Rose*, 513 F.3d at 1037-38. In *Rose*, the Ninth Circuit held the NBA preempted the application of state-law disclosure requirements to national banks, pursuant to both a specific disclosure statute and California's generally applicable consumer protection law. *Id.* at 1038.

Plaintiff's CPA and unconscionability claims are preempted for the same reasons. There is no indication in the NBA, or the OCC regulation on DCCs and DSAs, that this banking power is to be subject to state-law limitations. To the contrary, the OCC regulation comprehensively regulates it as a matter of *federal* law. Plaintiff seeks to hold DSNB liable under Washington state law for failing to sell payment protection as state-regulated insurance (*e.g.*, Compl. ¶¶ 3, 23); for allegedly failing to disclose eligibility restrictions, or doing so in an untimely way (*e.g.*, *id.* ¶¶ 7-8, 27-28, 32-33); and for failing to examine Plaintiff's eligibility for certain program benefits (*e.g.*, *id.* ¶¶ 5-6, 35). Those claims are preempted because the OCC regulation governs every one of the subjects as a matter of federal law. The regulation makes clear that DCCs and DSAs are banking, not insurance, products (12 C.F.R. § 37.1); it sets forth a detailed disclosure scheme, including form disclosures and timing requirements for the same (*id.* § 37.6 & Apps. A, B); it broadly prohibits misrepresentations in sales of DCCs and DSAs (*id.* § 37.3(b)); and it requires national banks to address eligibility as a disclosure matter, not as a sales suitability matter (*id.*, Apps. A, B). Relying on the OCC regulation's breadth, two courts have held the NBA preempts claims identical to Plaintiff's. *See Spinelli v. Capital One Bank*, 265 F.R.D. 598, (M.D. Fla. 2009); *Rose v. Bank of Am. Corp.*, No. CV 10-5067-VBF (JCx), slip op. at 5-6 (C.D. Cal. Nov. 5, 2010), *order adopted*, Order (C.D. Cal. Nov. 8, 2010).[1]

This is accordingly a prime example of the application of state-law requirements "prevent[ing] or significantly interfer[ing] with the national bank's exercise of its powers." *Barnett*, 517 U.S. at 33. Under Plaintiff's position, national banks' compliance with the OCC

---

[1] Copies of the orders in the *Rose* matter are attached as Appendix A to this brief.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

- 3 -

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

1 regulation's form disclosure and timing requirements would be insufficient. Banks also would
2 need to comply with the laws of 50 different States. Indeed, national banks would likely be
3 subject to even more than 50 potential different sales and disclosure regimes, given that
4 Plaintiff's causes of action would leave imposition of sales and disclosure obligations up to each
5 individual jury to determine under general standards of unfairness or deception. This "diverse
6 and duplicative superintendence" of national banks is precisely what the NBA seeks to avoid.
7 *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 13 (2007). As the Supreme Court put it, the NBA
8 erects "'a system extending throughout the country, and independent, so far as powers conferred
9 are concerned, of state legislation which, if permitted to be applicable, might impose limitations
10 and restrictions as various and as numerous as the States.'" *Id.* at 14 (citation omitted).

11 Neither of Plaintiff's two responses has any merit. First, she says (at Opp. 6-7) that the
12 NBA does not preempt laws of general applicability, such as consumer protection statutes. That
13 statement is simply wrong, as the numerous citations in DSNB's opening brief show. *See* DSNB
14 Mem. 8-9. Most importantly, Plaintiff's position is flatly contrary to Ninth Circuit precedent.
15 The Ninth Circuit held in both *Rose* and *Martinez*—that court's two most recent decisions
16 concerning NBA preemption—that the NBA did preempt applications of California's consumer
17 protection statute.

18 Plaintiff next argues (at Opp. 10-12) there is no conflict between the NBA and the state-
19 law duties she seeks to impose. But, as explained, Plaintiff ignores the Supreme Court and Ninth
20 Circuit's framework for analyzing conflict preemption questions under the NBA. She also
21 ignores the comprehensive nature of the OCC regulation, which covers the very matters that she
22 would regulate under state law. Plaintiff asserts that *Arevalo v. Bank of America Corp.* supports
23 her, but it is irrelevant. That court dismissed on standing grounds the claims that Plaintiff
24 asserts—*i.e.*, that the defendant deceptively induced voluntary enrollment in payment protection.
25 *See* 2011 WL 1195973, at *5. On preemption, the court held that the NBA did not preempt the

claims that the bank *involuntarily* enrolled the plaintiffs—reasoning that the OCC regulation did not address that issue. *See id.* at *14. The court expressly declined to address preemption of the deceptive enrollment claims as "not before this Court." *Id.* When courts *have* addressed such claims, they hold that the NBA preempts them. *See Spinelli*, 265 F.R.D. at 605; *Rose*, No. CV 10-5067-VBF (JCx), slip op. (C.D. Cal. Nov. 5, 2010).[2]

### B. The OCC Regulation Also Expressly Preempts Plaintiff's CPA And Unconscionability Claims

There is another reason why NBA preemption is especially clear. The OCC regulation plainly states that "[n]ational banks' [DCCs] and [DSAs] are governed by this part and applicable Federal law and regulations, *and not by … State law*." *Id.* § 37.1(c) (emphasis added). The OCC explained that "[t]his final rule, together with any other applicable requirements of Federal law and regulations, are intended to constitute the entire framework for uniform national standards for DCCs and DSAs offered by national banks. Accordingly, the final rule states that DCCs and DSAs are regulated pursuant to Federal standards, including part 37, *and not State law*." 67 Fed. Reg. at 58,964 (emphasis added). The OCC regulation "has the same preemptive effect as the [National Bank] Act itself." *Martinez*, 598 F.3d at 555 (internal citation omitted).

Plaintiff has two responses, neither of which has merit. First, she says (at Opp. 8) this Court should not defer because, purportedly, the OCC did not follow proper procedure in forming its express preemption determination. The assertion is wrong. Citing *Arevalo*, Plaintiff relies on 12 U.S.C. § 43, which prescribes a procedure for OCC preemption determinations. Plaintiff ignores subsection (c), however, which states that § 43 "shall not apply with respect to any … interpretive rule that … raises issues of Federal preemption of State law that are

---

[2] Plaintiff suggests—but does not say—that the Dodd-Frank Act governs preemption here. It does not, nor is the statute relevant. As Plaintiff admits (at Opp. 5 n.5), the Act's preemption provisions do not take effect until July 21, 2011. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1048, 124 Stat. 1376 (2010). And, even then, the statute does not purport to apply retroactively, as to potentially change, after the fact, law that *previously* applied to national banks.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT  
No. 3:10-cv-05830 RBL

- 5 -

WILMER CUTLER PICKERING HALE AND DORR LLP  
399 Park Avenue  
New York, NY 10022  
(212) 230-8800

essentially identical to those previously resolved by the courts." That exception applied here. The OCC explained, when it issued its rule, that the Eighth Circuit ruled more than a decade earlier that national banks were authorized to offer DCCs and the NBA thus preempted contrary state law. *See* 67 Fed. Reg. at 58,963 & nn.6-7 (citing *First Nat'l Bank of E. Ark. v. Taylor*, 907 F.2d 775, 778 (8th Cir. 1990)). Even if Plaintiff's assertion of procedural irregularity were correct and precluded *Chevron* deference, the OCC preemption determination would be due some deference. *See, e.g.*, *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) ("an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires" (citations omitted)); *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 563 n.7 (9th Cir. 2002) (OCC interpretation persuasive and "entitled to respect"). Two courts have applied the OCC preemption determination, holding claims identical to Plaintiff's to be preempted. *See Spinelli*, 265 F.R.D. at 605; *Rose*, No. CV 10-5067-VBF (JCx), slip op. at 4-5 (C.D. Cal. Nov. 5, 2010).

Second, Plaintiff argues (at Opp. 9-10) that the OCC intended only to displace state *insurance* law. That assertion is plainly wrong.[3] There is no such limitation in the regulation's text, which states without qualification that national banks' exercise of this banking power is governed by the OCC regulation and other federal law, but "*not ... by State law*." 12 C.F.R. § 37.1(c) (emphasis added). The intent of the regulation, the OCC explained, was for the final rule and "any other applicable requirements of Federal law and regulations … to constitute *the entire framework for uniform national standards* for DCCs and DSAs offered by national banks." 67 Fed. Reg. at 58,964 (emphasis added). *Spinelli* and *Rose* both addressed the meaning

---

[3] Moreover, Plaintiff's argument violates the cardinal rule of statutory interpretation that courts may not "rewrite statutory language by ascribing additional, material terms." *Texaco Inc. v. Duhe*, 274 F.3d 911, 920 (5th Cir. 2001); *see also Iselin v. United States*, 270 U.S. 245, 251 (1926) ("To supply omissions transcends the judicial function.").

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

- 6 -

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

of the OCC regulation and, properly, neither ascribed it Plaintiff's unduly narrow meaning.

## II. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. The Contract And Good-Faith Claims Should Be Dismissed

As Plaintiff acknowledges, to state a claim for breach of contract, a plaintiff must identify "a duty imposed by the contract" and "a breach of that duty." Opp. 12 (citing *Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995)). Plaintiff does not identify any contract duty that DSNB owed and breached. Plaintiff tries to explain her theory, but it makes no sense. She claims that DSNB had a contract duty to provide benefits in specified circumstances, but then says DSNB breached that duty because "the Payment Protection terms and conditions" of her contract rendered her "ineligible for benefits." Opp. 13. There is an obvious problem. Plaintiff cannot claim that the contract's own terms and conditions were themselves the breach. Plaintiff's other theories—that DSNB failed to disclose eligibility restrictions, and that contract terms were confusing—fare no better. Neither theory identifies any breach of any actual contract duty. At bottom, Plaintiff alleges some generalized wrongs and then asserts, without any basis in any contract duty, that DSNB breached her contract. The *Arevalo* court rejected the same counsel's identical strategy, holding they had "not explained which contractual burdens Bank of America is attempting to avoid." 2011 WL 1195973, at *7.

Plaintiff's good-faith claim should be dismissed for the same reason. *Badgett v. Security State Bank*, the definitive Washington Supreme Court case, makes clear that an implied duty "arises only in connection with terms agreed to by the parties"; there is no "free-floating duty of good faith unattached to the underlying legal document." 807 P.2d 356, 360 (Wash. 1991). But, again, Plaintiff fails to identify any contract term, much less a "specific contract term," as to which DSNB exercised bad faith. *Id.* Instead, Plaintiff tries the same nonsensical theory as with her contract claim—*i.e.*, that DSNB had a duty to provide her benefits, but breached a duty of good faith as to that contract term by failing to disclose the contract's "eligibility restrictions."

Opp. 14. In other words, to identify a contract term, Plaintiff says the contract obligated DSNB to provide her benefits, but to identify a breach of a duty of good faith, she says the contract's eligibility restrictions made her ineligible for benefits. She cannot have it both ways.

Plaintiff also says that DSNB's alleged failure to disclose eligibility restrictions "during contract formation and negotiation" can support her good-faith claim. Opp. 14 (quoting *Lectro-Tek Servs., Inc. v. Exeter Packers, Inc.*, No. 28088-8-III, 2010 WL 2403393, at *7 (Wash. Ct. App. Div. 3 June 17, 2010)). She is wrong. *Lectro-Tek*, an unpublished Washington Court of Appeals decision, did suggest that proposition in dictum, but it cited to the Washington Supreme Court's *rejection* of that proposition in *Badgett*. *See Badgett*, 807 P.2d at 359-60.

Finally, Plaintiff asserts that she has "a separate and independent [good-faith] claim," arising from DSNB's "discretionary authority to dictate Payment Protection contract terms in a take-it-or-leave-it manner," and abuse of that authority. Opp. 15. There is no such allegation in the complaint, nor—if there were—would it state a claim. Plaintiff's alternative theory relies on the duty of good faith that applies "when one party has discretionary authority to determine certain terms of the contract, *such as quantity, price, or time*," *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 632 (Wash. Ct. App. 1997) (internal quotation marks, citation omitted) (emphasis added), cited at Opp. 14. But the complaint does not allege that her contract afforded DSNB any such discretion or that DSNB abused such discretion. Ultimately, as with her contract theory, Plaintiff's good-faith claim simply alleges a handful of generalized wrongs disconnected from any contract duty. The *Arevalo* court rejected the same strategy by the same counsel as to the good-faith claim there too, finding that the plaintiffs "fail[ed] to state facts indicating that [their] rights to the benefits of the [payment protection] contract were frustrated." 2011 WL 1195973, at *7.

**B.     The Unjust Enrichment And Restitution Claims Should Be Dismissed**

Plaintiff does not dispute that, under Washington law, unjust enrichment and restitution

claims fail as a matter of law when a written agreement governs the parties' relationship. *See, e.g.*, *Do Sung Uhm v. Humana*, Inc., 620 F.3d 1134, 1143 n.13 (9th Cir. 2010); *In re Park W. Galleries, Inc.*, 732 F. Supp. 2d 1181, 1190 (W.D. Wash. 2010). And here, Plaintiff affirmatively pleads—and DSNB does not dispute—that she did enter into a payment protection contract. *See, e.g.*, Compl. ¶¶ 51-53, 67. Plaintiff nevertheless tries to evade this bar by saying (at Opp. 15-17) she pleads these claims as alternative bases for relief, if there is no contract. The problem, however, is that neither side here disputes the existence of the contract. Plaintiff does not cite any Washington case that would permit her claims in the face of the undisputed contract. And the other cases she cites make clear that pleading in the alternative would be permitted only if a plaintiff simultaneously challenges the contract's existence. *See Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010) ("While a party may plead a claim for unjust enrichment in the alternative where the existence of a valid contract is questioned, if there is no dispute over the existence of a contract, a claim for unjust enrichment necessarily fails.").

### C. The Unconscionability Claim Should Be Dismissed

Plaintiff's unconscionability claim fails both because the NBA preempts it and because unconscionability is only a defense to a claim for breach of contract, not a cause of action. *See* DSNB Mem. 14. Plaintiff cites no authority to the contrary, let alone any Washington authority. *See* Opp. 17-19. Instead, in every case Plaintiff cites, the party asserted unconscionability as a defense to contract enforcement. *See, e.g.*, *Zuver v. Airtouch Commc'ns*, 103 P.3d 753, 756 (Wash. 2004) (seeking to void arbitration agreement); *McKee v. AT&T Corp.*, 191 P.3d 845, 857 (Wash. 2008) (similar); *Penner v. Chase Bank USA, N.A.*, No. 3:06-cv-05092-FDB, 2006 WL 2192435, at *3 (W.D. Wash. Aug. 1, 2006) (seeking "declaration that [contract] provisions are … unconscionable … and as such are unenforceable"); *see also Doe v. SexSearch.com*, 551 F.3d 412, 419 (6th Cir. 2008) ("At common law, unconscionability is a *defense* against enforcement, not a basis for recovering damages." (emphasis added)) (cited at Opp. 21). Plaintiff, however,

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

- 9 -

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

1 asserts it as a cause of action for damages. *See* Compl. ¶¶ 75-79; Opp. 19. Washington does not recognize that cause of action, so the claim should be dismissed.

### D. The Injunctive And Declaratory Relief Claims Should Be Dismissed

Injunctions and declaratory judgments are only remedies, not causes of action. Plaintiff agrees that dismissal of these "claims" is proper if her other claims are dismissed. Opp. 20.

### III. PLAINTIFF'S CAUSES OF ACTION ARE TIME-BARRED

One of the clearest bases for dismissal of the complaint is the expiration many years ago of the statutes of limitations for her claims. Plaintiff's opposition is clear—as is her complaint—that every claim accrued approximately 13 years ago. She makes this point most clearly at page 2 of her brief, where she summarizes her complaint's allegations as follows: (1) DSNB misled Plaintiff regarding the payment protection program; (2) DSNB failed to adequately disclose the program's restrictions; (3) DSNB wrongfully enrolled Plaintiff in the program; and (4) DSNB made it difficult to file claims. Plaintiff does not claim that she ever filed, or sought to file, a claim, so the fourth summarized allegation is inapplicable to her case. The first three alleged wrongs all are asserted to have occurred at the time Plaintiff enrolled, which was 1998. Compl. ¶ 51. There is no plausible basis for Plaintiff to say that her claims are timely.

*The contract and good-faith-and-fair-dealing claims*. Plaintiff agrees that a cause of action for breach of contract or breach of the good-faith duty "begins running when the cause of action accrues." Opp. 22 (citing *Erickson v. Chase*, 231 P.3d 1261, 1265 (Wash. Ct. App. 2010)). Under Washington law, the claim accrues at the time of the alleged breach. *See Erickson*, 231 P.3d at 1265; *see also, e.g.*, *Wm. Dickson Co. v. Pierce Cnty.*, 116 P.3d 409, 414 (Wash. Ct. App. 2005). As discussed, Plaintiff asserts that DSNB breached the contract and good-faith duty by wrongfully enrolling her in the program and failing to disclose certain program eligibility restrictions. *See, e.g.*, Opp. 13, 15. That alleged misconduct occurred (if at all) at the time Plaintiff enrolled in the program—1998. Neither the complaint nor Plaintiff's

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL
- 10 -
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

opposition identifies any act by DSNB in the past six years that would constitute a breach of the contract or the good-faith duty.

Instead, Plaintiff offers a distraction, discussing the statute of limitations for partial payment of promissory notes. *See* Opp. 22 (citing Wash. Rev. Code § 4.16.270). That statute tolls the limitations period for sales contracts on the theory that "part payment amounts to a voluntary acknowledgement of the existence of the debt and from this the law implies a new promise [by that payor] to pay the balance." *Hamilton v. Pearce*, 547 P.2d 866, 869-70 (Wash. Ct. App. 1976) (cited at Opp. 22-23). As should be evident, the partial-payment statute is asserted by *sellers* who sue *purchasers* for payment. The statute has no application whatsoever here. Plaintiff's monthly payments are not partial payments on a sales contract. Moreover, if Plaintiff's view were credited, it would render statutes of limitations nonexistent altogether. A consumer dissatisfied with disclosures received at the outset of a contract—say, for example, a contract for cable television or telephone service—could extend the limitations period forever by monthly payment. Plaintiff's view is not the law.

*The unjust enrichment claim.* An unjust enrichment claim accrues at the time of the alleged breach of the implied promise to pay for the benefit received. *See Eckert v. Skagit Corp.*, 583 P.2d 1239, 1241 (Wash. Ct. App. 1978). Despite Plaintiff's attempt to rewrite the complaint in her opposition, according to the complaint's allegations (Compl. ¶¶ 98-104), Plaintiff's unjust enrichment claim accrued, if at all, around 1998, and as such is untimely by nearly a decade.

*The CPA claim.* Plaintiff does not dispute that a CPA claim accrues when the party discovers, or could have discovered, the facts constituting the alleged violation. *See* Opp. 23, citing *Pickett v. Holland Am. Line-Westours, Inc.*, 35 P.3d 351, 359-60 (Wash. 2001). Nor does she dispute that she knew, or reasonably should have known, of her contract's alleged eligibility restrictions at the time she received her contract, around 1998. Under Washington law, "parties have a duty to read the contracts they sign." *Del Rosario v. Del Rosario*, 97 P.3d 11, 16 (Wash.

2004). The complaint does not specify any other date when Plaintiff allegedly discovered the contract's terms. Plaintiff knew or should have known the basis for her allegations over a dozen years before she brought this action. *See Reeves v. Teuscher*, 881 F.2d 1495, 1501 (9th Cir. 1989) ("Knowledge will be inferred if the party in due diligence could have discovered the fraud."). Her CPA claim accordingly should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint.

Respectfully submitted,

    s/ Robert W. Trenchard

ROBERT W. TRENCHARD (N.Y. Bar No. 2679488)
    (*admitted pro hac vice*)
NOAH A. LEVINE (N.Y. Bar No. 4324521)
    (*admitted pro hac vice*)
PAMELA K. BOOKMAN (N.Y. Bar No. 4492328)
    (*admitted pro hac vice*)
CRAIG R. HEEREN (N.Y. Bar No. 4713053)
    (*admitted pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888
Robert.Trenchard@wilmerhale.com

JOHN R. BACHOFNER, WSBN #18650
BULLIVANT HOUSER BAILEY PC
805 Broadway St.
Suite 400
Vancouver, WA 98660
Tel: (360) 906-6340
Fax: (360) 395-8504
John.Bachofner@bullivant.com

May 16, 2011

*Counsel for Defendant Department Stores National Bank*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
No. 3:10-cv-05830 RBL

- 12 -

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

# CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Deborah M. Nelson
Nelson Boyd PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA 98101
206-971-7601
nelson@nelsonboydlaw.com

Jeffrey D. Boyd
Nelson Boyd PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA 98101
206-971-7601
boyd@nelsonboydlaw.com

Kenneth J. Grunfeld
Golomb & Honik, PC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
215-985-9177
kgrunfeld@golombhonik.com

Rachel J. Geman
Lieff Cabraser Heimann & Bernstein (NY)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
212-355-9500
rgeman@lchb.com

Randall K. Pulliam
Carney Williams Bates Bozeman
    & Pulliam, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
501-312-8500
rpulliam@carneywilliams.com

and I hereby certify that I am aware of no non-CM/ECF participants to whom this document should be mailed by United States Postal Service.

DATED: May 16, 2011                 s/ Robert W. Trenchard

ROBERT W. TRENCHARD (N.Y. Bar No. 2679488)
      (*admitted pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888
Robert.Trenchard@wilmerhale.com

*Counsel for Defendant Department Stores National Bank*

CERTIFICATE OF SERVICE
No. 3:10-cv-05830 RBL

WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800