UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHELLEY DENTON,

    Plaintiff,

  v.

DEPARTMENT STORES NATIONAL BANK,

    Defendant.

Case No. C10-5830RBL

ORDER GRANTING MOTION TO DISMISS
[Dkt. #22]

THIS MATTER comes before the Court on a motion to dismiss filed by defendant Department Stores National Bank ("DSNB"). [Dkt. #22]. Plaintiff, who is suing on behalf of herself and all others similarly situated, alleges that DSNB sold her and other Washington consumers a credit card payment protection service that is essentially worthless. In urging this Court to dismiss plaintiff's complaint, defendant argues that plaintiff's claims under the Consumer Protection Act and for unconscionability are preempted, and that her remaining claims are subject to dismissal for additional reasons.

For the reasons set forth below, the Court grants the motion to dismiss with leave to amend.[1]

---

[1] Because this matter can be resolved based on the parties' submissions and the balance of the record, their request for oral argument is denied.

ORDER - 1

## I. FACTS

In 1998, plaintiff purchased Payment Protection on her credit card, which is now issued by DSNB. Despite enrolling in the service, plaintiff complains that she is "virtually ineligible" for at least some of the benefits of the service because she is self employed. [Complaint, Dkt. #1, at ¶ 53].

According to plaintiff's complaint, defendant touts Payment Protection as a service that will safeguard subscribers' credit card accounts by temporarily suspending or cancelling the required minimum monthly credit card payments due in some circumstances, including unemployment and critical injury. [Complaint at ¶ 25]. Plaintiff contends that defendant's disclosures about the product were inadequate and belated. Even after the disclosures are made, plaintiff contends that they are inexorably confusing because the terms of the "Payment Protection scheme are varied, complicated, and always changing." [*Id.* at ¶ 29].

Plaintiff filed this lawsuit against defendant on November 14, 2010 in this court. This Court's jurisdiction is based on diversity. Plaintiff alleges claims for breach of contract, breach of the covenant of good faith and fair dealing, unconscionability, unjust enrichment, and violations of the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.* In addition to damages, she seeks restitution and injunctive and declaratory relief. This case is in its early stages, and plaintiff has not filed a motion for class certification.

## II. DISCUSSION

**A.  Dismissal Standard**

Defendant has filed a 12(b)(6) motion for failure to state a claim upon which relief can be granted. The complaint should be liberally construed in favor of the plaintiff and its factual allegations taken as true. *See, e.g.*, *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992). The Supreme Court has explained that "when allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal citation and quotation

ORDER - 2

omitted). A complaint must include enough facts to state a claim for relief that is "plausible on its face" and to "raise a right to relief above the speculative level." *Id.* at 555. The complaint need not include detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action." *Id.* A claim is facially plausible when plaintiff has alleged enough factual content for the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

**B. Standing**

As an initial matter, plaintiff must demonstrate that she has standing to pursue her claims. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that standing is a "threshold question in every federal case, determining the power of the court to entertain the suit."). To demonstrate standing, plaintiff must demonstrate an actual, personal injury in fact that is fairly traceable to defendant's challenged actions and likely to be redressed by a decision in her favor. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Named plaintiffs in a purported class action "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502.

As part of her unconscionability claim, plaintiff contends, "DSNB operates its customer service centers in such a way as to make it difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Payment Protection Coverage, and file claims." [Complaint at ¶ 76(i)]. Despite that allegation, plaintiff does not allege that she ever contacted a customer service center, tried to obtain more information about the service, or attempted to cancel Payment Protection. Therefore, she cannot pursue claims based on those allegations. For the same reasons, plaintiff cannot pursue a claim based on defendant's allegedly wrongful denial of claims or improperly requiring claimants "to submit excessive and duplicative documentation" to support a claim. *Id.* at ¶ 101. Nor does she allege that she was deterred from

ORDER - 3

filing a claim. In contrast, plaintiff does have standing to pursue her claims based on allegations that the disclosures she received were belated and otherwise deficient, that the product should have been sold as state regulated insurance, and that the product she purchased was essentially worthless. The remainder of the order will address those claims.

**C. Preemption**

As plaintiff concedes, DSNB is, and was during the relevant time, a national bank chartered under the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq.* The NBA vests national banks "with authority to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.'" *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549, 554-55 (9th Cir. 2010) (quoting 12 U.S.C. § 24 (Seventh)). Undisputedly, among other powers, the NBA grants national banks the power to offer debt cancellation contracts and debt suspension agreements like those at issue in this case. 12 U.S.C. § 24 (Seventh); 12 C.F.R. § 7.4008(a). Pursuant to that authority, defendant asserts that plaintiff's claims under the CPA and for unconscionability are preempted by the NBA and the regulations promulgated by the Office of the Comptroller of the Currency ("OCC").

National banks "are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11, 127 S. Ct. 1559 (2007). However, "federal control shields national banking from unduly burdensome and duplicative state regulation." *Id.* at 1566-67. A purpose of the NBA is to avoid subjecting national banks to "different state or local restrictions and requirements" which would be "costly and burdensome." *Id.* at 1568 n.6 (quoting 69 Fed. Reg. 1908 (2004)).

In this context, the "presumption against preemption" does not apply. Rather, there is a presumption in favor of preemption. *Watters*, 127 S. Ct. at 1567 (explaining that the Court has "interpreted grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law") (internal citation and quotation omitted); *see also Bank of Am. v. City & County of San*

ORDER - 4

*Francisco*, 309 F.3d 551, 561 (9th Cir. 2002) ("Therefore, in determining the preemptive scope of federal statutes and regulations granting a power to national banks, the Supreme Court has adopted the view that 'normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress has explicitly granted'") (quoting *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32-33 (1996)).

The NBA confers authority upon the OCC to promulgate regulations implementing the Act. 12 U.S.C. § 93a. OCC regulations provide, "A national bank is authorized to enter into debt cancellation contracts and debt suspension agreements and charge a fee therefor, in connection with extensions of credit that it makes, pursuant to 12 U.S.C. 24 (Seventh)." 12 C.F.R. § 37.1(a).

### 1. Express Preemption, Conflict Preemption, and the CPA Exemption

The OCC's implementing regulations explicitly provide that debt cancellation contracts are governed by 12 C.F.R. § 37 and "applicable Federal law and regulations, and not . . . by state law." 12 C.F.R. § 37.1(c). Although plaintiff contends that the regulation refers only to state insurance law, its language is not so limited. In fact, Part 37 was "intended to constitute the entire framework for uniform national standards for DCCs and DSAs offered by national banks." 67 Fed. Reg. 58962, 58964. "Federal regulations have no less preemptive effect than federal statutes." *Fidelity Fed. Savings & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153 (1982). In this case, plaintiff's allegations regarding the sufficiency, content, and timing of defendant's disclosures fall within the purview of 12 C.F.R. § 37 and are therefore expressly preempted.

In addition, the OCC's regulations, state, contrary to plaintiff's assertion, that the service is a banking product, not an insurance product. 12 C.F.R. § 37.1. Any claim based on an assertion that the product is insurance and is subject to state regulation as such is preempted under the doctrines of express and conflict preemption. Moreover, despite arguing that she is not seeking to alter the federal scheme, plaintiff's theory of the case necessarily implicates, and seeks to regulate, both the timing and content of the disclosures defendant provides. Requiring additional disclosures and/or altering their timing would in turn frustrate the purposes of

ORDER - 5

consistency and uniformity and impose state law restrictions on defendant's exercise of its authorized power. Therefore, plaintiff's claims conflict with the federal regulations and are preempted.

Even if plaintiff's claim related to the timing of the disclosures was not preempted, it is likely exempted from the CPA's coverage. Plaintiff contends that defendant violated the CPA by failing to provide written disclosures before she entered into the contract. [Complaint at ¶ 7] ("By not adequately disclosing the terms of Payment Protection coverage to consumers before they buy the product, DSNB is violating – among other things – Washington's Consumer Protection Act.") (emphasis in original). However, the OCC regulations specifically permit a bank to provide "short form" disclosures orally followed by "long form" disclosures by mail within three business days. 12 C.F.R. § 37.6(b)(3). Plaintiff does not allege that defendant failed to provide the "short form" disclosures. Section 19.86.170 of the CPA provides: "Nothing in this chapter shall apply to actions or transactions otherwise permitted by . . . any other regulatory body or officer acting under statutory authority of . . . the United States." The statute "does not exempt actions or transactions merely because they are regulated generally; the exemption applies only if the particular practice found to be unfair or deceptive is specifically permitted, prohibited, or regulated." *Miller v. U.S. Bank of Washington, N.A.,* 72 Wn. App. 416, 420 (1994). In this case, the action complained of, the provision of written disclosures only after consumers buy the product, is permitted by the OCC regulations. Therefore, and for the reasons set forth in *Miller*, plaintiff's CPA claim for failure to provide written disclosures before she entered into the contract is untenable.

### 2. Field Preemption

The federal regulations provide specific standards for debt cancellation and suspension contracts "to ensure that national banks offer and implement such contracts and agreements consistent with safe and sound banking practices, and subject to appropriate customer protections." 12 C.F.R. § 37.1(b). The regulations set forth when consumers must receive the disclosures and detailed requirements for their content. 12 C.F.R. § 37.6. For example, the

ORDER - 6

regulations set forth requirements for both "short form" and "long form" disclosures, and special rules for transactions that occur by telephone. The regulations include appendices with the required content. *Id.* The "long form" disclosures, which all customers must receive, require national banks to explain to customers that the service is optional, eligibility requirements apply, and customers have the ability to cancel the product without cost within thirty days after receiving the disclosures and the procedure for termination after thirty days expires. *Id. App'x B*. According to the OCC, the regulations were aimed at providing a "comprehensive Federal consumer protection scheme." OCC, Final Rule, 67 Fed. Reg. 58962, 58963 (Sept. 19, 2002).

Plaintiff argues that she merely seeks to augment the federal scheme by ensuring that banks do not engage in fraud or provide disclosures that are false or "riddled with material omissions." [Plaintiff's Response at pp. 10-11]. Notably, plaintiff does not assert a claim for fraud or misrepresentation. Nor does she support her theory with factual examples. Instead, she contends generally that the disclosures she belatedly received were confusing and incomplete, but the federal regulations extensively regulate both the content and readability of the disclosures. 12 C.F.R. § 37.6(d) (requiring that banks provide disclosures that are "readily understandable" and "in a meaningful form" that includes methods that "call attention to the nature and significance of the information provided."). The regulations also prohibit misrepresentation (§ 37.3) and provide the terms for refunds (§ 37.4). In light of the comprehensive scheme, there is no room for state regulation of debt cancellation contracts and debt suspension agreements. Therefore, plaintiff's claims are preempted.

This Court's decision is consistent with decisions from various courts around the country. *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 600 (M.D. Fla. 2009); *Rose v. Bank of Am. Corp.*, Case No. CV 10-5067-VBF (Jcx), slip. op. at 5-6 (C.D. Cal. Nov. 5, 2010), order adopted, Order (C.D. Cal. Nov. 8, 2010); *First Nat'l Bank of E. Ark. v. Taylor*, 907 F.2d 775, 780 (8th Cir.

1990); *Thomas v. Bank of Am. Corp.*, 2011 WL 2176189 (Ga. App. June 6, 2011).[2] In contrast, plaintiff relies on *Arevalo v. Bank of Am. Corp.*, 2011 WL 1195973 (N.D. Cal. March 29, 2011). The *Arevalo* court's analysis of the issue of conflict preemption is based on the fact that defendant had involuntarily enrolled plaintiffs in the program. *Id.* at *14 ("The regulation does not govern how national banks must handle involuntary enrollments."). Because the plaintiff in this case enrolled voluntarily, the *Arevalo* court's analysis is inapplicable to the issues before this Court. Moreover, the court's finding that express preemption was lacking was based on defendant's failure to show that the OCC followed proper procedures in issuing the preemption regulation. Id. at *13. However, the *Arevalo* decision failed to address 12 U.S.C. § 43(c), which provides that the notice and comment requirements "shall not apply with respect to any . . . . interpretive rule that . . . raises issues of Federal preemption of State law that are essentially identical to those previously resolved by the courts." The OCC explained when it issued the rule that the Eighth Circuit had ruled more than a decade earlier that national banks were authorized to offer debt cancellation contracts and the NBA therefore preempted contrary state law. 67 Fed. Reg. 58,963 & nn.6-7 (citing *First Nat'l Bank of E. Ark.*, 907 F.2d at 778). For those reasons, the Court finds the *Arevalo* decision less persuasive than those of other courts that have considered the issue. Plaintiff also attempts to rely on the recently enacted Dodd-Frank Wall Street Reform and Consumer Protection Act, codified in part at 12 U.S.C. § 25(b), but as she admits, the relevant provisions are not yet applicable. Accordingly, that law has no effect on plaintiff's claims.

For all of the foregoing reasons, the Court dismisses as preempted plaintiff's claims under

---

[2] The finding of preemption is also consistent with other decisions from this circuit in analogous situations where courts have held that the NBA preempts consumer protection claims that would restrict national banks' exercise of their enumerated powers. *See, e.g., Martinez*, 598 F.3d at 556-57; *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037 (9th Cir. 2008); *Fultz v. World Savings & Loan Ass'n*, 2008 U.S. Dist. LEXIS 65778 (W.D. Wash. August 18, 2008); *Vatomanyuk v. Quality Loan Serv. Corp. of Wash.*, 699 F. Supp. 2d 1242, 1244 (W.D. Wash. 2010); *Dvornekovic v. Wachovia Mortgage*, 2010 WL 4286215, at *1 (W.D. Wash. Oct. 26, 2010).

the CPA and for unconscionability.[3]

**D.      Breach of Contract and Duty of Good Faith and Fair Dealing**

As defendant concedes, plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing are not preempted. Although plaintiff's complaint states, in a conclusory fashion, that defendant breached the contract, she does not identify any provision breached. Failing to do so fatally undermines her claim. *See, e.g.*, *Arevalo*, 2011 WL 1195973 at *7 (holding, under California law, that plaintiffs failed to state a claim where they failed to identify the contractual provision defendant sought to avoid); *see also Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995) (explaining that an action for breach of contract requires a duty imposed by the contract and a breach of the same). While plaintiff argues that defendant failed to return her premiums even though she is ineligible for benefits, she does not allege that she sought a refund or that defendant breached the contract by failing to provide a refund. Similarly, although plaintiff argues that defendant essentially made it impossible for her to receive the benefits for which she contracted, she neither explains that assertion nor counters defendant's argument that she never tried to receive benefits under the contract. Furthermore, plaintiff's good faith claim does not create new contractual obligations, but instead requires parties to adhere to the contracts they create. Plaintiff's Response at p. 4 (citing *Trombley v. Bank of Am. Corp.*, 715 F. Supp.2d 290, 296 (D.R.I. 210)). Accordingly, plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing both fair as a matter of law because plaintiff has failed to identify a term breached.

Finally, defendant argues, and the Court finds, that plaintiff's restitution "claim" is actually a remedy, not a separate claim. *See, e.g., Veritas Operating Corp. v. Microsoft Corp.*, 2008 U.S. Dist. LEXIS 112135 (W.D. Wash. Feb. 26, 2008) ("Restitution is an alternative

---

[3] The unconscionability claim is subject to dismissal for a second reason: unconscionability is a defense to a contract, not an independent claim. *See, e.g., Riensche v. Cingular Wireless, LLC*, 2006 WL 3827477 at *4 (W.D. Wash. Dec. 27, 2006). Although plaintiff disputes that principle, she has not provided any contrary authority.

ORDER - 9

remedy to damages for breach of contract. The purpose of restitution is to prevent unjust enrichment of the defendant by restoring to the plaintiff any benefit conferred on the defendant."). For that reason, if plaintiff's breach of contract claim survives, she may pursue restitution as an alternate remedy but not as a claim.

**E.     Unjust Enrichment**

Generally, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604 (1943). Based on that principle, defendant contends that plaintiff's unjust enrichment claim must be dismissed. Although defendant argues that the existence of a valid contract is undisputed, plaintiff does dispute that point: she argues that the contract is illusory because it actually provided her with no benefit. In light of that allegation, the Court will not dismiss the unjust enrichment claim based on the existence of the written contract.

However, as with plaintiff's breach of contract claim, her unjust enrichment claim is inadequately pled because she fails to identify an actionable promise or its breach. *See, e.g., Eckert v. Skagit Corp.*, 20 Wn. App. 849, 851 (1978) (explaining that an unjust enrichment claim "lies in a promise implied by law that one will render to the other person entitled thereto that which in equity and good conscience belongs to that person."). To the extent that plaintiff implies that the promise was to grant her payment protection benefits regardless of her eligibility, she does not contend that she ever filed a claim or needed the benefits of the service. Nor does she claim that she experienced any of the actions set forth as "unconscionable acts." [Complaint at ¶ 101]. Furthermore, any claim for unjust enrichment based on plaintiff's allegations that the product is actually insurance or based on the timing of the disclosures is preempted for the reasons set forth above. [*Id.* at ¶¶ 99, 100]; *see also Dvornekovic*, 2010 WL 4286215 at *4 (finding that a breach of contract claim was preempted when it was "not merely the standard breach of contract" but instead alleged that the bank's "whole mortgage system is problematic"). Therefore, plaintiff's unjust enrichment claim is subject to dismissal as

ORDER - 10

inadequately pled.

**F.     Leave to Amend**

In her opposition to the motion to dismiss, plaintiff requests leave to amend. The Court will not grant leave to amend the claims that are preempted because any amendment would be futile. It is not clear, however, that any claims would be futile for breach of contract, breach of the duty of good faith and fair dealing, or unjust enrichment. Although defendant argues that the claims are time barred, it is impossible to assess that assertion without knowing the substance of the claim. Accordingly, plaintiff is granted leave to amend her claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. To do so, she must file an amended complaint, which highlights or otherwise clearly emphasizes any additions, in the docket within thirty days of the date of this order. If filed, the amended complaint will supercede the original complaint and will become the operative pleading.

Because the Court has granted plaintiff leave to amend, it will not address at this time defendant's contention that injunctive and declaratory relief are unavailable.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion to dismiss (Dkt. #22). Plaintiff's claims for unconscionability and for violations of the CPA are dismissed as preempted. Plaintiff's claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment are dismissed with leave to amend as set forth above.

**IT IS SO ORDERED.**

Dated this 1st day of August, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE