1  Deborah M. Nelson, Esq. (State Bar No. 23087)
   nelson@nelsonboydlaw.com
2  Jeffrey D. Boyd, Esq. (State Bar No. 41620)
   boyd@nelsonboydlaw.com
3  NELSON BOYD, PLLC
   1700 Seventh Avenue, Suite 2220
4  Seattle, WA  98101
   Telephone:  (206) 971-7601
5

6  *Attorneys for Plaintiff*

7              IN THE UNITED STATES COURT
            DISTRICT OF WASHINGTON (TACOMA)
8

9  SHELLEY DENTON, and all others similarly
   situated,                                    CIVIL ACTION NO.: 3:10-cv-5830-RBL
10
              PLAINTIFF,
11                                              FIRST AMENDED CLASS ACTION
        vs.                                     COMPLAINT
12
   DEPARTMENT STORES NATIONAL BANK,             DEMAND FOR JURY TRIAL
13
              DEFENDANT.
14

15          **FIRST AMENDED CLASS ACTION COMPLAINT**

16          Plaintiff Shelley Denton, individually and on behalf of all others similarly situated (the

17  "Class"), bring this class action against Defendant Department Stores National Bank (referred

18  to as "DSNB" or the "Company").  Plaintiff seeks certification of this matter as a class action.

19  Plaintiff, by and through her attorneys, submits this First Amended Class Action Complaint

20  (the "Amended Complaint") against the Defendant named herein and allege as follows:

21                      **NATURE OF THE ACTION**

22          1.      This proposed or putative class action stems from the illicit activities undertaken

23  by DSNB while marketing and selling products associated with its Macy's credit cards known

    as "Account Protection," "Credit Card Protection" and other monikers that all offer similar

Complaint - Page 1
                                    NELSON BOYD, PLLC
                              1700 Seventh Avenue, Suite 2220
                                    Seattle, WA  98101
                                     (206) 971-7601

1    coverage (hereinafter collectively referred to as "Payment Protection").

2       2.      DSNB violated the law by the deceptive and misleading manner in which it

3 offers the Payment Protection plan to consumers, and the manner in which it administers claims

4 for benefits by consumers.

5       3.      DSNB markets Payment Protection through its retail locations, direct mail and

6 via telemarketing. It represents Payment Protection as a service that suspends or cancels the

7 required minimum monthly payment due on the subscriber's credit card account and excuses

8 the subscriber from paying the monthly interest charge and the Payment Protection plan fee for

9 a limited period of time, preventing the account from becoming delinquent.  DSNB's marketing

10 for this product claims that "Macy's Credit Protection Protects 8 Ways!"

11       4.      Despite its simple explanation for marketing purposes, DSNB's Payment

12 Protection plan is a dense maze of limitations, exclusions and restrictions, making it impossible

13 for customers to determine what Payment Protection covers and whether it is a sound financial

14 choice. DSNB makes no effort to determine whether a subscriber is eligible for Payment

15 Protection benefits at the time of sale.  As a consequence, the Company bills thousands of

16 retired persons (many of whom are senior citizens), along with the unemployed, self-employed,

17 part-time or seasonal Washington residents, as well as disabled individuals, for Payment

18 Protection coverage, even though their employment or health status prevents them from

19 receiving benefits under the plan.

20       5.      Days or weeks after the sale of Payment Protection, DSNB may in some

21 instances mail written material to the subscriber.  Given the confusing way the written

22 materials present the terms and conditions of Payment Protection, it would be extremely

23 difficult for a subscriber to decipher those provisions.

Complaint - Page 2

6.     Upon information and belief, DSNB has established its "customer service" support in such a way that subscribers cannot easily cancel the plan or receive answers to benefit questions.  It has established its "claim filing" system such that subscribers cannot easily file claims or receive benefits for filed claims.

7.     Upon information and belief, DSNB routinely denies claims of its subscribers despite its obligations to provide the Class agreed upon Payment Protection benefits.

8.     DSNB does not refund Payment Protection premiums even after it has denied subscribers claims for Payment Protection benefits, nor does it address subscribers' continued obligations to pay the monthly fee for Payment Protection after a claim has been denied.

9.     DSNB knows that for those subscribers who choose to pay for Payment Protection, few will ever receive benefits under the plan and even for those that do, the amounts paid in "premiums" will usually exceed any benefits paid out.

10.     As a result of Payment Protection, DSNB has unjustly enriched itself by many millions of dollars, all thanks to a product which was fraudulently marketed to the Class which DSNB knew provided no benefits to thousands of Washington residents who are nevertheless charged for the product month in and month out.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that:

(a)  This is a class action involving 100 or more class members,

(b) Plaintiff, a citizen of the State of Washington, is diverse in citizenship from Defendant Department Stores National Bank is a subsidiary of Citibank and has principal places of business in Sioux Falls, South Dakota.

(c) the amount in controversy is at least five million dollars exclusive of interests and costs.

Complaint - Page 3

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

12.     The Court has personal jurisdiction over DSNB, which has at least minimum contacts with the state of Washington because it has conducted business there and has availed itself of Washington's markets through its promotion, sales, and marketing efforts.

13.     This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the district in which this Court sits.

## PARTIES

14.     Plaintiff Shelley Denton ("Ms. Denton") resides in Sequim, Clallam County, Washington.  In approximately 1995, Ms. Denton got a credit card from The Bon department store.  The Bon later became Macy's department store and Ms. Denton's credit card became a Macy's credit card.  Ms. Denton has continuously had a credit card from The Bon or Macy's since approximately 1995.  In approximately 1998, Ms. Denton purchased the Credit Protection and/or Account Protection services for her Macy's credit card.  This card is now issued by DSNB.

15.     Defendant DSNB is a subsidiary of Citibank.[1]   DSNB was chartered in 2005 and its principal place of business is Sioux Falls, South Dakota.

16.     DSNB is the credit card issuer of Visa and retail private label accounts for Citibank's relationship with Macy's, Inc.  Cards issued by DSNB bear the marks of Macy's, Inc. store brands such as Bloomingdale's and Macy's.

17.     Macy's has approximately 810 department stores and furniture galleries, as well as its online store, including over 30 stores in Washington.  Macy's had sales in 2009 of $23.5 billion.

---

[1] Citibank is not a defendant in this lawsuit.

Complaint - Page 4

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

## FACTUAL ALLEGATIONS

18.     DSNB markets Payment Protection as a service that will safeguard subscribers' credit card accounts by temporarily suspending the required minimum monthly credit card payments due in certain highly restricted circumstances, or permanently canceling accounts in other circumstances.  In such circumstances, the subscribers are also not required to pay the monthly interest charges or the Payment Protection plan fee for the month in question.

19.     Subscribers may later be provided with written materials from DSNB. However, it is virtually impossible for the subscriber to determine all of the exclusions and limitations of Payment Protection, or the value of the product, based on what is provided.

20.     The terms of DSNB's Payment Protection scheme are varied, complicated and always changing.  However, all of the various plans provided for some form of payment suspension upon the occurrence of the following events, as it defines the terms: Involuntary Unemployment, Employer Approved Leave of Absence, Disability, Hospitalization or Nursing Home Care, Critical Injury or Terminal Medical Condition, and Loss of Life.

21.     The restrictions, limitations and exclusions associated with these events that trigger Payment Protection are expansive and constantly evolving.

22.     The telephone marketing scripts and the written materials provided by DSNB are incomplete, indecipherable, misleading and obfuscatory.  Through its marketing of Payment Protection, DSNB leads customers to believe that they are contracting for a useful product, despite DSNB's knowledge that customers are ineligible for Payment Protection benefits.

23.     Upon information and belief, the following restrictions on Payment Protection are imposed, but because they are in small print and in incomplete, indecipherable, misleading and obfuscatory language, are not readily comprehensible to consumers:

Complaint - Page 5

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

a.    Payment Protection does not apply to persons self-employed or not employed;

b.    Payment Protection does not apply to persons employed part time or seasonally;

c.    Payment Protection does not apply to retired persons;

d.    Subscribers cannot use their credit card for new purchases while Payment Protection benefits are being provided.

24.    For instance, Washington retired persons, many of whom are senior citizens, are charged for this product even though they are categorically excluded from receiving most or all of the benefits under the plan.

25.    Similarly, the benefits offered to self-employed persons are limited, but DSNB nevertheless fails to affirmatively inform self-employed persons of the limitations in benefits when they are enrolled.

26.    Further, upon information and belief, part-time or seasonal workers are also limited or categorically excluded from receiving benefits.  However, DSNB makes no effort to investigate whether any of the Washington consumers that pay for Payment Protection are part-time or seasonal.  These terms are not adequately communicated or defined in any DSNB materials.

27.    Finally, benefits are unavailable or limited for disabled persons, but DSNB nevertheless fails to affirmatively inform these individuals of the limitations in benefits when they are enrolled.

28.    The cost of Payment Protection is a monthly charge of $1.89 per $100 of a subscriber's month-ending credit card balance.

29.    For example, if a DSNB credit card customer has a balance on a covered account of $10,000, as a Payment Protection subscriber, the customer owes DSNB $189.00 that

Complaint - Page 6

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1    month just for Payment Protection coverage.

2         30.    DSNB benefits from the sale of Payment Protection by lowering available credit

3    to its subscribers through the imposition of this additional fee.  Further, the imposition of the

4    fee creates a cycle of profitability for DSNB, in that the fee itself increases subscribers'

5    monthly credit balances, which in turn increases Payment Protection fees in upcoming months.

6         31.    Upon information and belief, employees at DSNB's Payment Protection call

7    center are trained to assist subscribers with all questions, including inquiries concerning

8    canceling memberships, plan benefits and filing claims.

9         32.    DSNB has intentionally established its customer service system to make it as

10   difficult as possible for subscribers to cancel Payment Protection, to get detailed information

11   about claim benefits or restrictions, or to file claims.

12        33.    For example, upon information and belief, employees at DSNB's call center are

13   given authority to deny claims immediately over the phone, but do not have authority to

14   approve claimants to receive benefits in the same manner.

15        34.    Further, when claims for Payment Protection benefits are denied, DSNB has not

16   implemented a process through which subscribers' Payment Protection premiums are refunded,

17   even if the subscribers are deemed to be *per se* ineligible for Payment Protection benefits.  In

18   fact, if subscribers are denied Payment Protection benefits, DSNB neither affirmatively

19   removes subscribers from Payment Protection enrollment going forward, nor is it DSNB's

20   policy to inform subscribers of their continued obligations pay for Payment Protection even

21   though they have been deemed to be ineligible for benefits.

22        35.    Payment Protection is a profit center for DSNB and serves the Company's

23   interest in generating fee income, to the detriment of its most vulnerable customers.

Complaint - Page 7

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

36.     Although heralded as coverage designed for a subscriber's peace of mind and for use when times get tough, the Payment Protection device is designed to prey on the financially insecure and is virtually worthless because of the numerous restrictions that are imposed, because of the exclusions of benefits, and because of the administrative and bureaucratic hurdles that are placed in the way of Washington subscribers who attempt to secure payments from DSNB under Payment Protection coverage.

## FACTUAL ALLEGATIONS AS TO SHELLEY DENTON

37.     Shelley Denton is a Washington resident.

38.     In approximately 1995, Ms. Denton received a credit card from The Bon department store.  The Bon later became Macy's department store and Ms. Denton's credit card became a Macy's credit card.  Ms. Denton has continuously had a credit card from The Bon or Macy's since approximately 1995.

39.     In approximately 1998, Ms. Denton purchased the Credit Protection and/or Account Protection services for her Macy's credit card.  This card is now issued by DSNB.

40.     Ms. Denton is ineligible and has always been ineligible for Payment Protection benefits.  Prior to enrollment in Payment Protection, and at all times up to and through the date of filing of this Amended Complaint, Ms. Denton has been self employed.

41.     Despite DSNB's knowledge of Ms. Denton's self employment, DSNB continued to collect premiums from Ms. Denton.

42.     On or about April of 2009, Ms. Denton's business experienced financial hardship and Ms. Denton called DSNB to file a claim for Payment Protection benefits. Because of Ms. Denton's self employment, DSNB denied any benefits to be paid.  Further, a DSNB representative told Ms. Denton that any Payment Protection benefits would not apply to

Complaint - Page 8

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1    her because of her self-employed status.

2        43.    As a result of this denial and the resultant dispute over benefits, DSNB cancelled

3    Ms. Denton's Payment Protection without informing Ms. Denton.  At no time did DSNB issue

4    a written or verbal statement to Ms. Denton that it was canceling her Payment Protection.

5        44.    The next month, when Ms. Denton received her credit card statement, she

6    discovered that her DSNB credit card no longer had Payment Protection.  Ms. Denton called

7    DSNB to inquire whether there was a mistake and whether she was eligible for Payment

8    Protection.  Ms. Denton spoke with a DSNB representative who assured her that she was

9    eligible for Payment Protection and that it could be placed back on her credit card after a one

10   month waiting period.

11       45.    Even after DSNB cancelled Ms. Denton's Payment Protection and despite the

12   knowledge that Ms. Denton was ineligible for Payment Protection benefits, DSNB contracted

13   with Ms. Denton to re-enroll in Payment Protection.  In doing so, DSNB continued to collect

14   premiums from Ms. Denton without conferring any benefit to her.

15       46.    DSNB representatives are trained to handle customer inquiries in a uniform

16   manner and treat inquires from all customers in the same manner that Ms. Denton was treated.

17   In doing so, DSNB contracts with customers by giving their customers the expectation that they

18   are eligible for Payment Protection.  However, when a customer tries to file a claim for

19   benefits, DSNB deters that person by stating that Payment Protection does not cover them.

20       47.    Ms. Denton is still enrolled in Payment Protection.  Her credit card account is

21   still charged for Payment Protection every month even though she is ineligible to collect

22   Payment Protection benefits.

23

Complaint - Page 9

**CLASS ACTION ALLEGATIONS**

48.    Plaintiff brings this action on her own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

49.    Plaintiff brings this action as class representatives to recover damages and/or refunds from DSNB for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, injunctive relief, and declaratory judgment.  Plaintiff also brings this action as a class representative for any available equitable relief, including but not limited to contract rescission of her and the Class' Payment Protection contracts.

50.    Plaintiff bring this action on her own behalf and on behalf of a subclass of all other person's similarly situated (the "Subclass"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages and/or refunds from DSNB for breach of contract.

51.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

52.    Plaintiff seeks certification of a Class comprised of the following Washington citizens and consumers:

> All residents of the state of Washington who (1) were solicited by DSNB to purchase Payment Protection; and (2) paid for Payment Protection ("Payment Protection Subscribers") at all times the product was sold.

Plaintiff seeks certification of the following subset class comprised of the following Washington citizens and consumers:

> All residents of the state of Washington who were not eligible for full benefits, or whose eligibility for benefits were limited by express exclusions, including but not limited to those Payment Protection subscribers who were retired, self-employed or part time or seasonal workers, or were disabled, either at the time that they were solicited for and made payments to DSNB for Payment

Complaint - Page 10

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

Protection, or any time thereafter while continuing to pay for Payment Protection.

53.     Plaintiff seeks certification of a Subclass comprised of the following Washington citizens and consumers:

> All residents of the state of Washington who (1) paid for Payment Protection, (2) filed claims for Payment Protection; and (3) were denied benefits for Payment Protection.

54.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and Subclass before the Court determines whether certification is appropriate.

55.     Excluded from the Class and Subclass are:

a.      Defendants and any entities in which Defendants have a controlling interest;

b.      Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

c.      The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.      Persons or entities with claims for personal injury, wrongful death and/or emotional distress;

e.      All persons or entities that properly execute and timely file a request for exclusion from the Class;

f.      Any attorneys representing the Plaintiff or the Class; and

g.      All governmental entities.

56.     <u>Numerosity – Fed. R. Civ. P. 23(a)(1)</u>.  The Class is comprised of over 100 people, the joinder of which in one action would be impracticable.  The exact number or identification of the Class members is presently unknown.  The identity of the Class members is ascertainable.  In addition to rolls maintained by the Defendants and its agents, the Class members may be located and informed of the pendency of this action by a combination of

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

electronic bulletins, e-mail, direct mail and public notice, or other means.  The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

57.  <u>Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>.  The questions of law and fact common to the Class predominate over questions affecting only individual Class and Subclass members, and include, but are not limited to, the following:

a)  Whether DSNB breach its contract with the Class and/or Subclass,

b)  Whether DSNB breach its covenant of good faith and fair dealing with the Class,

c)  Whether Plaintiff and the Class members are entitled to restitution of all amounts acquired by DSNB's through its common and uniform scheme;

d)  Whether Plaintiff and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by DSNB;

e)  Whether Plaintiff and the Class members are entitled to prospective injunctive relief enjoining DSNB from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Amended Complaint;

f)  Whether Plaintiff and the Class members are entitled to rescission of their contracts with DSNB,

g)  Whether DSNB breached its contracts with Plaintiff and the Subclass members, and

h)  Whether Plaintiff and the Class members are entitled to recover compensatory and punitive damages as a result of DSNB's wrongful scheme.

58.  <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiff asserts claims that are typical of the entire Class, having all been targeted by DSNB as consumers who were improperly assessed charges for Payment Protection, and having paid for this product.  Plaintiff and the Class members have similarly suffered harm arising from DSNB's violations of the law as alleged in this Amended Complaint.

Complaint - Page 12

59.   <u>Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.   Plaintiff is an adequate representatives of the Class because she fits within the class definition and her interests do not conflict with the interests of the Members of the Class she seeks to represent.   Plaintiff is passionate about this litigation personally and will prosecute this action vigorously for the benefit of the entire Class.   Plaintiff is represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as class counsel.   Class counsel has litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.   Plaintiff and class counsel can fairly and adequately protect the interests of all of the Members of the Class.

60.   <u>Superiority – Fed. R. Civ. P. 23(b)(3)</u>.   The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.   Plaintiff and members of the Class have suffered irreparable harm as a result of DSNB's fraudulent, deceitful, unlawful, and unfair conduct.   Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Amended Complaint.   Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as DSNB continues to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Amended Complaint, and DSNB would be permitted to retain the proceeds of their violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments.   A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1

## COUNT ONE – BREACH OF CONTRACT

2     61.    Plaintiff restates and re-alleges the preceding paragraphs of the Amended

3 Complaint as though set out here word for word.

4     62.    Upon information and belief, Plaintiff and DSNB contracted for Payment

5 Protection benefits.

6     63.    At the time that Plaintiff and the Class contracted for Payment Protection,

7 DSNB promised to confer benefits to Plaintiff and the Class.  In exchange for the benefits

8 DSNB promised, Plaintiff and the Class paid premiums to DSNB.

9     64.    Only after the contract was formed and Plaintiff and the Class had already begun

10 paying premiums to DSNB, did DSNB provide Plaintiff and the Class with additional

11 disclosures about DSNB's obligations under the contract.

12     65.    DSNB drafted Payment Protection written materials provided to Plaintiff and the

13 Class.  These materials are ineffective, ambiguous, deceptive, unfair, and misleading) and do

14 not unambiguously state that certain customers are *per se* ineligible to receive benefits.

15 Nevertheless, when Plaintiff and the Class enrolled in Payment Protection, DSNB promised to

16 confer a benefit through the sale of Payment Protection.

17     66.    DSNB's additional disclosures were written in a manner that made it extremely

18 difficult for Plaintiff and the Class to understand the fact that DSNB was essentially provided

19 no benefit whatsoever in exchange.  Had these disclosures been written in an adequately

20 explanatory fashion no rational individual would continue to pay premiums to his or her

21 detriment while receiving no benefit in exchange.

22     67.    Considering the great business acumen and experience of DSNB in relation to

23 Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the

Complaint - Page 14

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these written provisions are unconscionable and, therefore, unenforceable as a matter of law.

68.    DSNB operates its customer service centers in such a way as to make it difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Payment Protection coverage, and file claims, in order for DSNB to maximize the number of Payment Protection subscribers and minimize the amount of benefits it pays to these subscribers.

69.    Plaintiff and the Subclass filed claims and sought to receive the benefit promised by DSNB when they enrolled in Payment Protection.  By failing to provide promised benefits to the Plaintiff and the Subclass, DSNB failed to meet its obligations under the contract.

70.    Plaintiff and members of the Class and Subclass have sustained damages as a result of DSNB's breaches of contract.

## COUNT TWO - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING[2]

71.    Plaintiff restates and re-alleges the preceding paragraphs of the Amended Complaint as though set out here word for word.

72.    Upon information and belief, Plaintiff and DSNB contracted for Payment Protection benefits.

73.    Upon information and belief, the terms and conditions of this agreement are

---

[2] Washington treats the breach of the covenant of good faith and fair dealing as a species of a breach of contract claim.  Accordingly, Plaintiff pleads these claims together, in a single count.

Complaint - Page 15

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

embodied in written materials in the possession of DSNB.

74.      In Washington, a covenant of good faith and fair dealing is implied in every contract.  Washington has adopted the concepts of general duties of good faith and fair dealing in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205.

75.      Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

76.      Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain; willful rendering of imperfect performance; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

77.      DSNB has breached the covenant of good faith and fair dealing inherent in the Payment Protection agreement.

78.      Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them in the Payment Protection agreement.

79.      Plaintiff and members of the Class have sustained damages as a result of DSNB's breach of the covenant of good faith and fair dealing.

Complaint - Page 16

**COUNT THREE – UNJUST ENRICHMENT**

80.     Plaintiff restates and re-alleges the preceding paragraphs of this Amended Complaint as though set out here word for word.

81.     In seeking to sell credit cards to Plaintiff and members of the Class, DSNB withheld material terms from consumers prior to activation of Payment Protection charges, including the express benefits, limitations, restrictions, and exclusions associated with the product.

82.     DSNB was unjustly enriched by its business practice of making it so impermissibly difficult for consumers to actually receive coverage under Payment Protection that the service was virtually worthless.  Such unconscionable acts include, but are not limited to:

      a)     Denying claims over the phone without written explanation;

      b)     Denying claims without sufficient investigation;

      c)     Requiring claimants to submit excessive and duplicate documentation, and/or;

      d)     Establishing a telephone number that does not allow for claimants to speak to a live person, a person in a timely manner, or a person that is properly trained to handle Payment Protection claims, order for the subscriber to successfully file a claim.

83.     DSNB was unjustly enriched by charging Plaintiff and the Class members for illusory benefits.

84.     As a result of DSNB's actions, the Company was unjustly enriched at the expense of its unsuspecting cardholders.

**COUNT FOUR – INJUNCTIVE RELIEF
PAYMENT PROTECTION RESTITUTION**

85.     Plaintiff restates and re-alleges the preceding paragraphs of this Amended

Complaint - Page 17

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1  Complaint as though set out here word for word.

2      86.    Plaintiff asks the Court to grant the remedy of restitution to her and to all

3  members of the Class who made payments to DSNB for Payment Protection.  The Plaintiff asks

4  the Court to grant the following relief:

5          a)    a refund of all Payment Protection payments made to DSNB;

6          b)    a refund to any consumers who were retired at the time they were sold

7  Payment Protection by DSNB or at any time they paid for Payment Protection;

8          c)    a refund to any consumers who were ineligible for benefits, or who faced additional restrictions to receive benefits as a result of their health or

9  employment status, at the time they were sold Payment Protection by DSNB or at any time they paid for Payment Protection;

10   

11          d)    a refund to consumers who were otherwise not eligible for Payment Protection benefits at any time they paid for Payment Protection; and/or

12   

13      87.    Plaintiff seeks injunctive relief enjoining DSNB from continuing to engage in the common scheme described in this Amended Complaint.

14   

15  **COUNT FIVE – EQUITABLE RELIEF**
**PAYMENT PROTECTION RESCISSION**

16      88.    Plaintiff restates and re-alleges the preceding paragraphs of this Amended

17  Complaint as though set out here word for word.

18      89.    Plaintiff asks the Court to grant the remedy of contract rescission to her and to

19  all members of the Class who made payments to DSNB for Payment Protection.

20      90.    The Plaintiff asks the Court to grant herself and the Class a refund of all

21  Payment Protection payments made to DSNB.

22      91.    Plaintiff seeks equitable relief of contract rescission, eliminating her and the

23  Class' obligation to pay premiums under the Payment Protection contract.

Complaint - Page 18

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1

## COUNT SIX – DECLARATORY RELIEF

2

92.     Plaintiff restates and re-alleges the preceding paragraphs of this Amended

3

Complaint as though set out here word for word.

4

93.     Plaintiff seeks a Declaratory Judgment finding that the conduct of DSNB is in

5

violation of the Washington Consumer Protection Act, and enjoining them from continuing in

6

such conduct.

7

## PRAYER FOR RELIEF

8

**WHEREFORE,** Plaintiff prays:

9        A.      That the Court determines that this action may be maintained as a class

10

action under Rule 23 of the Federal Rules of Civil Procedure.  The Plaintiff is a proper class

11

representative and the best practicable notice of this action is to be provided to members of the

12

Class represented by the Plaintiff;  add plaintiffs' counsel as class counsel

13       B.      That judgment be entered against DSNB and in favor of Plaintiff and the

14

Class on the Causes of Action in this Amended Complaint, for injunctive and equitable relief as

15

requested above, and for actual, compensatory and punitive in an amount to be determined at

16

trial;

17       C.      That judgment be entered imposing interest on damages, litigation costs,

18

and attorneys' fees against DSNB;

19       D.      For all other and further relief as this Court may deem necessary and

20

appropriate.

21

## JURY DEMAND

22

Plaintiff demands a trial by jury consisting of twelve persons on all issues so triable.

23

Complaint - Page 19

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1

**NELSON BOYD, PLLC**

2

BY:   /s/ *Deborah M. Nelson*

3
Deborah M. Nelson, WSBA #23087
Jeffrey D. Boyd, WSBA #41260

4
1700 Seventh Ave, Suite 2220
Seattle, WA 98101

5
Telephone: (206) 971-7601
nelson@nelsonboydlaw.com

6
boyd@nelsonboydlaw.com

7
Kenneth J Grunfeld (admitted pro hac vice)
GOLOMB & HONIK, PC 1

8
515 Market Street, Suite 1100
Philadelphia, PA 19102

9
Tel: (215) 985-9177
Email: kgrunfeld@golombhonik.com

10

Rachel Geman (admitted pro hac vice)

11
LIEFF CABRASER HEIMANN & BERNSTEIN
(NY)

12
250 Hudson Street, 8th Floor New York, NY
10013-1413

13
Tel: (212) 355-9500
Email: rgeman@lchb.com

14

Randall K. Pulliam (admitted pro hac vice)

15
CARNEY WILLIAMS BATES PULLIAM &
BOWMAN, PLLC

16
11311 Arcade Drive, Suite 200
Little Rock, AR 72212

17
Tel: (501) 312-8500
Email: rpulliam@carneywilliams.com

18

*Attorneys for Plaintiff*

19

20

21

22

23

Complaint - Page 20

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following, and I hereby certify that I am aware of no non- CM/ECF participants to whom this document should be mailed by United States Postal Service.

Deborah M. Nelson
Jeffrey D. Boyd
Nelson Boyd PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA 98101
206-971-7601
nelson@nelsonboydlaw.com

Kenneth J Grunfeld
Golomb & Honik, PC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
215-985-9177
kgrunfeld@golombhonik.com

Rachel J. Geman
Lieff Cabraser Heimann & Bernstein (NY)
250 Hudson Street, 8th Floor
New York, NY 10013-1413 212-355-9500 rgeman@lchb.com

*Counsel for Plaintiff Shelley Denton*

ROBERT W. TRENCHARD
NOAH A. LEVINE
PAMELA K. BOOKMAN
CRAIG R. HEEREN
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Robert.Trenchard@wilmerhale.com

JOHN R. BACHOFNER, WSBN 18650
BULLIVANT HOUSER BAILEY PC
805 Broadway St. Suite 400
Vancouver, WA 98660

Complaint - Page 21

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA 98101
(206) 971-7601

1  Tel: (360) 906-6340
   John.Bachofner@bullivant.com
2  *Counsel for Defendant Department Stores National Bank*

3

4  Dated:  August 31, 2001                    _____/S/_____
                                              Randall K. Pulliam
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Complaint - Page 22